UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br><br>    Plaintiff,<br><br>  v.<br><br>SLAINTE BARS LLC,<br><br>    Defendant. | Case No. 21-cv-03750-JSC<br><br>**ORDER RE: PLAINTIFF'S STANDING** |

Brian Whitaker sues Slainte Bars LLC, the owner of the Alhambra Irish House in Redwood City, California, for violations of (1) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (ADA), and (2) the Unruh Civil Rights Act, Cal. Civ. Code § 51-53, based on Slainte Bars' failure to accommodate his disability. (Dkt. No. 1.) Slainte Bars moved to dismiss the complaint for lack of subject matter jurisdiction. (Dkt. No. 11.) In particular, Slainte Bars made a factual challenge to Mr. Whitaker's Article III standing to pursue his ADA injunctive relief claim, contending that Mr. Whitaker's injury is not actual or imminent. The Court concluded that drawing all reasonable inferences from the complaint's allegations in Mr. Whitaker's favor, he had adequately alleged an intent to return to the Alhambra Irish House sufficient to support Article III standing. (Dkt. No. 21.) However, as Slainte Bars was making a factual attack on Mr. Whitacker's standing, and had identified evidence sufficient to support a finding that at the time he filed this lawsuit he did not have a genuine intent to return to the establishment, an evidentiary hearing was required to resolve the standing issue. (Dkt. Nos. 21; 34.) The Court held the evidentiary hearing on February 7, 2022, at which Mr. Whitaker was the only witness. (Dkt. No. 43.)

**LEGAL STANDARD**

Mr. Whitaker bears the burden of establishing federal subject matter jurisdiction; thus, he must prove his Article III standing to pursue his ADA claim. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003); *see also D'Lil v. Best W. Encina Lodge & Suites,* 538 F.3d 1031, 1036 (9th Cir. 2008) *(*quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))* (*"A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution [and] standing is a 'core component' of that requirement"). The standing analysis considers whether the plaintiff has demonstrated (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury. *Lujan*, 504 U.S. at 560.

The question before the Court is whether Mr. Whitaker has proved his Article III standing to pursue his Title III ADA claim. Injunctive relief is the only remedy available for a violation of the ADA, Title III. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("only injunctive relief is available for violations of Title III."). To prove his standing to pursue injunctive relief, Mr. Whitaker must demonstrate "an injury-in-fact and a sufficient likelihood of repeated harm." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011). Mr. Whitaker cannot demonstrate a sufficient likelihood of repeated harm, and thus lacks standing, "if he is indifferent to returning to the store or if his alleged intent to return is not genuine." *Id*. Thus, to prove his constitutional standing, Mr. Whitaker must prove he intends, or at least intended, to return to the Alhambra Irish House.

Mr. Whitaker's citation to *Chapman* for the proposition that since he encountered a barrier at the Alhambra Irish House he automatically has standing to pursue injunctive relief (Dkt. No. 54 at 4) is wrong. As *Chapman* explained, to have Article III standing to pursue ADA injunctive relief, a plaintiff must have suffered injury-in-fact *and* demonstrate a likelihood of future injury sufficient to support injunctive relief. *Id.* at 946; *see also id.* at 949 (Article III . . . requires a sufficient showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third

2

1  parties"). Mr. Whitaker's actual injury is not at issue; at this time Slainte Bars does not dispute
2  that Mr. Whitaker actually visited the Alhambra Irish House and encountered alleged barriers in
3  connection with the outside dining.  But to have standing for injunctive relief, Mr. Whitaker must
4  *also* prove a sufficient likelihood of future harm. *Id*. at 950. Mr. Whitaker's citation to *Civil Rights*
5  *Education and Enforcement Center (CREEC) v. Hospitality Properties Trust*, 867 F.3d 1093 (9th
6  Cir. 2017), to support his argument that once he encounters the barrier his standing has been
7  "formalized," (Dkt. No. 54 at 4), is equally misplaced. *CREEC* did not hold that an injury is
8  imminent without an intent to return; instead, in addressing a facial challenge to Article III
9  standing, the court held that whether "a plaintiff has visited a facility in the past may be indicative
10 of whether she will do so in the future"; but in the absence of travel plans, "a past visit may not be
11 sufficient evidence of imminent future harm." *Id.* at 1100.  Mr. Whitaker must prove a genuine
12 intent to return; absent such intent, he does not have a likelihood of future injury and therefore no
13 standing to pursue injunctive relief.
14      Article III standing, that is, whether Mr. Whitaker genuinely intends to return to the
15 Alhambra Irish House, is determined based on the facts as they existed at the time the operative
16 complaint was filed.  *Id.* at 1102 ("the proper focus in determining jurisdiction are the facts
17 existing at the time the complaint under consideration was filed").

## MR. WHITAKER'S PROCEDURAL OBJECTIONS

19      At the commencement of the evidentiary hearing, Mr. Whitaker orally objected to
20 proceeding with the hearing, citing *Acevedo v. C & S Plaza*, and claiming that because jurisdiction
21 is intertwined with the merits it was improper to hold the evidentiary hearing.  (Dkt. No. 47 at 4.)
22 He also argued that *Whitaker v. Tesla* was somehow dispositive.  (*Id.* at 7.)  Mr. Whitaker's
23 objections are too little too late.
24      First, the objections are too late.  This Court addressed Slainte Bars' factual lack of subject
25 matter motion to dismiss by order filed September 20, 2021. (Dkt. No. 21.) The Court concluded
26 that Plaintiff had sufficiently alleged an intent to return to the property, but that Defendant had
27 submitted evidence sufficient to dispute those allegations and thus an evidentiary hearing was
28 needed to resolve the standing question. After the parties notified the Court that the case had

3

settled, and then proceeded with the case as if it had not settled (Dkt. Nos. 27, 30), the Court held a case management conference on December 16, 2021. The docket entry for that conference states: "The parties consent to proceed with an evidentiary hearing by videoconference." (Dkt. No. 34.) From September 2021, through the commencement of the evidentiary hearing, Mr. Whitaker did not once dispute the need for an evidentiary hearing. Even when the Court scheduled a pre-evidentiary hearing conference to discuss evidentiary hearing matters and provided a schedule for the filing of exhibits, Mr. Whitaker did not file anything and, indeed, did not appear at the pre-evidentiary hearing. (Dkt. Nos. 34, 36, 37, 38.) For this reason, alone, the objections are overruled.

Second, the objections are meritless. The facts of *Acevedo v. C & S Plaza Ltd. Liab. Co.*, No. 20-56318, 2021 WL 4938124, at *1 (9th Cir. Oct. 22, 2021), are entirely distinguishable. There, the defendant moved to dismiss for lack of subject matter jurisdiction on the grounds that its store aisles had been ADA compliant since 1998; that is, that it had not violated the ADA. *Acevedo v. C & S Plaza Ltd. Liab. Co.*, No. 20-1153 DOC, Dkt. No. 19 at 4, (C.D. Cal. Sept. 19, 2020). The district court granted the motion to dismiss. The Ninth Circuit held that it was improper to decide the motion to dismiss based upon extrinsic evidence because a court may not decide genuinely disputed facts where "the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Acevedo*, 2021 WL 4938124, at *1 (internal citation omitted). The district court had found the case was moot, and therefore it lacked subject matter jurisdiction, by resolving the merits—it held there was no ADA violation. Significantly, the Ninth Circuit also held that

> [w]here a jurisdictional issue is separable from the merits of a case, a court applies Rule 12(b)(1)'s standards and is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, and make findings of fact concerning the existence of jurisdiction. Under this approach, the plaintiff retains the burden to establish the court's subject matter jurisdiction.

*Id*. (internal citation omitted). Defendant's standing argument here is entirely separable from the merits. Whether when Mr. Whitaker filed this case he had a genuine intent to return to the Alhambra Irish House in Redwood City once the ADA violations (if any) are cured does not touch upon whether there was an ADA violation in the first place. Thus, *Acevedo* actually supports the

4

appropriateness of resolving the disputes of fact regarding Mr. Whitaker's standing to pursue injunctive relief.

Mr. Whitaker's reliance on *Whitaker v. Tesla* is equally unavailing. Assuming Mr. Whitaker is referring to *Whitaker v. Tesla Motors, Inc.,* 985 F.3d 1173, 1179 (9th Cir. 2021), that case merely addressed what is required to *plead* standing for an ADA Title III claim; it did not discuss a factual challenge to standing. *See Acevedo*, 2021 WL 4938124 at *1 (explaining that a defendant may bring "a facial attack, which challenges jurisdiction 'facially,' by arguing the complaint 'on its face' lacks jurisdiction, or a 'factual' attack, by presenting extrinsic evidence (affidavits, etc.) demonstrating the lack of jurisdiction on the facts of the case.")

The Court must thus resolve whether Mr. Whitaker has met his burden of proving his standing to pursue injunctive relief. *See Hohlbein v. Hosp. Ventures LLC*, 248 F. App'x 804, 806 & n.2 (9th Cir. 2007) (holding that a trial court may resolve disputes of fact relevant to standing by holding an evidentiary hearing).

**DISCUSSION**

The operative complaint was filed on May 19, 2021. Based on the record, the Court finds that on that date Mr. Whitaker did not have a genuine intent to return to the Alhambra Irish House in Redwood City and therefore has not met his burden of showing a likelihood of future injury sufficient to support Article III standing.

Mr. Whitaker's post-evidentiary hearing brief focuses on the genuineness of his visit to the Redwood City establishment in the first instance; namely, that he was exploring where he might relocate. Even accepting Mr. Whitaker's testimony that exploring neighborhoods to possibly relocate was the primary reason for his visit, he has not established that at the time he filed suit he had a genuine intent to return to the Alhambra Irish House if the alleged barriers were rectified, or, to put it another way, that the barriers were presently deterring him from visiting the establishment. He offers no evidence as to why he would return to Redwood City and this establishment in particular. Indeed, he admits that he has settled on relocating to Sacramento. While he testified that he might visit San Francisco and Oakland if he moved to Sacramento, the Court does not find from his testimony that at the time he filed suit he had an intent to return to

1  Redwood City. Again, his post-hearing brief does not cite to any of Mr. Whitaker's testimony, so
2  the Court is left to guess what testimony he is relying upon. The only testimony the Court could
3  find that touches on Redwood City is that it is on the way from San Jose to San Francisco. (Dkt.
4  No. 47 at 23:24-25:6.)

5          To the extent Mr. Whitaker contends that having an intent to live in the Bay Area is
6  sufficient to establish a genuine intent to return, the Court disagrees. He cites no case to support
7  such a proposition, and the caselaw is to the contrary. "[W]here, as here, the public
8  accommodation being sued is far from the plaintiff's home" the Ninth Circuit has "found actual or
9  imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return
10 to the geographic area where the accommodation is located and a desire to visit the
11 accommodation if it were made accessible." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d
12 1031, 1037 (9th Cir. 2008) (finding that the Sacramento plaintiff adequately alleged an intent to
13 return and stay at a Santa Barbara hotel where she offered evidence that she visited Santa Barbara
14 one to three times a year, had three specific trips planned for that year, and had specific reasons
15 related to the "hotel's style, price, and location" for wanting to stay at that particular hotel); *see
16 also Doran v. 7-Eleven, Inc*., 524 F. 3d 1034 (9th Cir. 2008) (finding that the plaintiff established
17 that he was deterred from returning to a 7-Eleven that was 550 miles from his home given his
18 allegations that he had visited the 7-Eleven 10-20 times in the past, the 7-Eleven was located near
19 his favorite restaurant in the area, and he intended to go to the area during his annual Disneyland
20 trips); *Pickern v. Holiday Quality Foods, Inc*., 293 F.3d 1133, 1035 (9th Cir. 2002) (finding that
21 the plaintiff adequately alleged that he was deterred from visiting a grocery store located 70 miles
22 from his home where he stated in his declaration that it was his favorite grocery store and that he
23 visited the area every week to see his grandmother). Here, in contrast, Mr. Whitaker did not
24 testify as to any specific connection to Redwood City, any specific plan to return to Redwood
25 City, or any specific reason to return to the Alhambra Irish House in Redwood City.

26         In any event, the Court also finds that when he visited the Alhambra Irish House, Mr.
27 Whitaker travelled to Redwood City for the purpose of finding business establishments to sue, not
28 because two to three times a month he was visiting the Bay Area to canvas neighborhoods. First,

as Mr. Whitaker's sworn testimony revealed in another action filed in this District, on August 25, 2021, Mr. Whitaker made a one-day trip to Burlingame, California, which only lasted a few hours, he was accompanied by a friend to whom he paid $500 to act as security, and that few-hours' trip resulted in his filing 14 lawsuits in the Northern District of California. (Dkt. Nos. 49-4, Whitaker Depo. at 20:10-21; 26:15-27:3; Dkt. No. 50-7 at ¶¶ 14-26 .)[1] As in this case, he testified under oath that he flew to Burlingame on August 25 to "look for potential residency." (Dkt. No. 49-4, Whitaker Depo. at 15:8-10.) That explanation is not credible in light of the circumstances of the trip.

Second, the sheer number of lawsuits Mr. Whitaker filed in the Northern District of California in 2021 supports the Court's finding. In 2021 alone, Mr. Whitaker filed approximately 560 cases, just in the Northern District of California. Yet he testified under oath at the evidentiary hearing that he does not travel to Northern California to look for businesses to sue. (Dkt. No. 47 at 70:8-9.) That testimony is not credible in light of his litigation history.

Third, in contrast to his February 7, 2022 testimony under oath "that I don't go to these places to look for places to sue," (*id.*), he earlier testified under oath that his "advocacy"—that is, his lawsuits—were the primary reason for his 2021 trips to the Bay Area. (Dkt. No. 49-2, Whitaker Depo. at 13:25-14:12; 15:23-16:3; 24:2-4.) And in October 2021, Mr. Whitaker signed a one-year lease for an apartment in Los Angeles, California—conduct which is inconsistent with visiting the Bay Area in Spring 2021 (and beyond) because he wanted to move there. (Dkt. No. 49-4, Whitaker Depo. at 12:17-13:14; 61:2-7.)

Of course, even if Mr. Whitaker's initial visit to the Alhambra Irish House was to determine if it complied with the disability laws, Mr. Whitaker could still establish his standing to

---

[1] While this deposition transcript was not admitted into evidence at the time of the evidentiary hearing because it was taken the same day as the evidentiary hearing in this case, Defendant submitted it in connection with its post-evidentiary hearing briefing and Mr. Whitaker made no objection. (Dkt. No. 54.) Likewise, Mr. Whitaker does not object to Defendant's Request for Judicial Notice. (Dkt. No. 50.) The Court grants the request for judicial notice as to Exhibit 7 which contains the list of lawsuits filed in this District following Mr. Whitaker's August 25, 2021 visit under Federal Rule of Evidence 201(b). *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts").

pursue injunctive relief. *See CREEC*, 867 F.3d at 1102 (recognizing tester standing). But Mr. Whitaker still needs to prove a likelihood of future injury to establish standing to pursue his ADA injunctive relief claim. *Chapman*, 631 F.3d at 953. He has not done so. At the evidentiary hearing he testified that three months prior to the hearing he asked his attorneys to provide him with a list of businesses that he had sued and settled with so that he could *start* to go back and visit them. (Dkt. No. 47 at 58:7-11; 73:5-23.) And further, that he intended to return and visit each and every one of them. (*Id*. at 64:12-14.) Even accepting this testimony as true, at best it would show that around November 2021 (three months before the February 7, 2022 hearing) he developed an intent to return. Standing, however, is determined at the time of the filing of the operative complaint—here, May 2021. *See CREEC*, 867 F.3d at 1102. There is nothing in the record that supports a finding that in May 2021 he intended to return to every business he had sued, let alone an intent to return to the Alhambra Irish House. Indeed, he could not identify a single Bay Area business he had returned to, despite having sued—and settled with—hundreds. (Dkt. No. 47 at 58-59.)

Mr. Whitaker's insistence that *D'Lil* precludes this Court from considering the undisputed fact that Mr. Whitaker has not revisited nearly any of the hundreds of businesses he has sued in deciding whether he has a genuine intent to visit the Alhambra Irish House is unpersuasive. First, even without considering Mr. Whitaker's failure to return to the hundreds of businesses he has sued, he has still not established that when he filed the complaint in this action he had a genuine intent to return to the Irish House given the paucity of evidence he offered about Redwood City and the Alhambra Irish House. *See Whitaker v. Peet's Coffee, Inc*., No. C 21-07055 WHA, 2022 WL 976978, at *2 (N.D. Cal. Mar. 31, 2022). Second, *D'Lil* held that courts had to be cautious about considering such evidence, not that it was irrelevant at all times and in all circumstances. *D'Lil*, 538 F.3d at 1040. In *D'Lil* the Ninth Circuit held that it was improper to deem the plaintiff's testimony not credible merely because she had filed 60 ADA lawsuits and alleged in each that she intended to return to the defendant's establishment. The court noted that there was no evidence as to whether those places had been made accessible such that the plaintiff could have returned. Here, in contrast, Mr. Whitaker testified that he settles most of his cases and always

8

1   insists on fixing the problem as part of the settlement.  (Dkt. No. 47 at 13:3-16.)  Further, the
2   plaintiff in *D'Lil* had offered evidence of an intent to return specific to the defendant
3   establishment.  *D'Lil*, 538 F.3d at 1038-39.  Mr. Whitaker has not offered any such evidence.
4         Mr. Whitaker's lament that if the Court finds that he does not have standing to bring his
5   ADA claim, the ADA's purpose of providing equal access to the disabled will be hindered is
6   misplaced.  The standing question is only about whether Mr. Whitaker must bring his claims in
7   state court rather than federal court.  Mr. Whitaker can get all the relief he seeks in state court.  *See*
8   *Arroyo v. Rosas*, 19 F.4th 1202, 1204 (9th Cir. 2021) ("any violation of the ADA is automatically
9   a violation of the Unruh Act") (citing Cal. Civ. Code § 51(f)); *Johnson v. Huong-Que Rest.*, No.
10  21-CV-04133-BLF, 2022 WL 658973, at *4 (N.D. Cal. Mar. 4, 2022) ("Injunctive relief is also
11  available under the Unruh Act") (citing Cal. Civ. Code § 52.1(h)). The real question is why Mr.
12  Whitaker insists on filing in federal court where he faces the Article III hurdle.  *Arroyo v. Rosas*,
13  19 F.4th 1202, 1212-13 (9th Cir. 2021).

## CONCLUSION

"Though its purpose is 'sweeping,' and its mandate 'comprehensive,' the ADA's reach is not unlimited. Rather, as with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman*, 631 F.3d at 946.  Mr. Whitaker has not done so.  The ADA claim must therefore be dismissed for lack of standing.  Because the lack of standing means the Court does not have subject matter jurisdiction, dismissal of the supplemental state-law claim is mandatory, not discretionary. *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001).

**IT IS SO ORDERED.**

Dated: May 5, 2022

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

9